UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY E. HARP,

    Petitioner,

v.

NOAH NAGY,

    Respondent.

Case No. 20-cv-11866
Honorable Laurie J. Michelson

---

**OPINION AND ORDER DISMISSING PETITION FOR HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

---

Anthony Harp is incarcerated at the G. Robert Cotton Correctional Facility. Harp claims that it is difficult, if not almost impossible, for prisons to comply with COVID-19 precautions such as six-foot distancing and wearing masks. And he says that contracting COVID-19 is particularly concerning for him: he is 60 years old, has hyperlipidemia (a high number of fat cells in the blood), hypertension (high blood pressure), lipoma (a non-cancerous lump under the skin), and elevated prostate-specific antigen (an indicator of several possible conditions, including prostate cancer). Given the confluence of his age, his health, COVID-19, and the prison environment, Harp seeks temporary release from prison with GPS monitoring. So Harp has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. He also requests an "immediate emergent injunctive order." (ECF No. 1, PageID.1.)

Unfortunately, the Court was unable to address this petition as quickly as it would have liked. The conditions from the coronavirus pandemic are constantly changing. And the Court has little doubt that the procedures and protocols being implemented by the Michigan Department of Corrections today, including vaccinations of inmates and staff, are different than they were at the start of this unprecedented health crisis.

While recognizing the evolving circumstances of the pandemic, the Court can only decide the petition based on the evidence before it, which was last updated at the start of 2021. Based on that record, the Court will dismiss Harp's petition.

## I.

Harp is incarcerated at the G. Robert Cotton Correctional Facility in Jackson, Michigan ("JCF") where he is serving a sentence of 45 to 90 years for four counts of first-degree criminal sexual conduct.

As noted above, Harp started this lawsuit by requesting an "immediate emergent injunctive order" under 28 U.S.C. § 2254. (ECF No. 1.) He named warden Noah Nagy as the defendant (respondent) (*see id*. at PageID.1), and he alleged that he was likely to experience irreparable injury absent an injunction due to being 60 years old, his health conditions, and the correctional staff's inability to prevent him from being infected with COVID-19. (*Id*. at PageID.3, 5.) Harp stated that, although the Michigan Department of Corrections and officials at the JCF have tried to prevent the spread of COVID-19, inmates routinely ignore the recommended procedures, and prison officials have failed to take adequate steps to enforce the rules and to protect him from death. (*Id*. at PageID.6.) Harp maintained that Nagy had a duty under the Eighth Amendment to protect him from

becoming infected with COVID-19 and that there were no steps which prison officials could take to adequately protect him from the virus. (*Id*. at PageID.7.) Thus, he asked the Court to issue an injunction directing the MDOC to release him on an electronic tether or GPS device for the duration of the COVID-19 pandemic. (*Id*. at PageID.8.)

In an order dated September 3, 2020, the Court denied Harp's request for a temporary restraining order, construed his request for immediate relief as one for preliminary injunctive relief, and directed Harp to supplement his request for a preliminary injunction. (ECF No. 4, PageID.22-23.) The Court also directed the Warden to respond to Harp's request for injunctive relief. (*Id*. at PageID.23.) The Court directed both parties to address whether Harp's petition was proper under 28 U.S.C. § 2254 (as opposed to 28 U.S.C. § 2241), whether Harp was required to exhaust his claims in state court before seeking a writ from a federal court, and whether Harp's Eighth Amendment claim should be recast as one under the Due Process Clause. (ECF No. 4, PageID.23.)

Harp then filed a supplemental brief in which he alleged that § 2254 was the proper vehicle for his petition, that he correctly brought his claim under the Eighth Amendment (as opposed to the Due Process Clause), that he had exhausted his administrative remedies, and that there was no other available state remedy to exhaust. (ECF No. 7, PageID.26–29, 32–33.) He also asked the Court to order the Warden to produce videotapes and log books showing that MDOC's protocols for preventing the spread of COVID-19 were not being following at JCF and that the MDOC has moved inmates from unit to unit and from other facilities to JCF, contrary to the MDOC's claim that no inmates are being moved. (*Id*. at PageID.31–32.) To support his claim for injunctive relief, Harp filed medical records that

3

summarize his health conditions, document his vital statistics, describe the special accommodations he has received, indicate the medications he has been taking, and list various diagnoses. (ECF No. 8.) Harp also confirmed that the only relief he is seeking is his release from custody. (ECF No. 7, PageID.28.)

Warden Nagy filed a response to Harp's motion. Nagy agrees that Harp properly filed his suit under § 2254. (ECF No. 15, PageID.128.) But Nagy alleges that Harp has failed to exhaust any state remedies for his claims and failed to establish a basis for granting a preliminary injunction under the Eighth Amendment. (*Id*.)

Harp subsequently submitted his own affidavit and the affidavits of several other inmates at the JCF. (ECF No. 18.) In his own affidavit, Harp alleges that the spread of COVID-19 at JCF is significant and that, as of January 1, 2021, approximately twenty members of the JCF staff, including the warden, had testified positive for COVID-19. (*Id.* at PageID.396.) Harp further alleges that he is housed in the B Unit, and that unit was quarantined for the third time on or about November 9, 2020. (*Id*.) Harp reiterates in his reply that no conditions of confinement can ensure his safety and that he has satisfied the requirements of an Eighth Amendment claim. (*Id.* at PageID.396–398.) Harp states that if he is released, he could stay with his brother in Detroit, Michigan and have his whereabouts monitored with a tether or GPS device. (*Id.*)

As for the affidavits filed by several other inmates at JCF, they acknowledge that the MDOC has protocols in place to prevent the spread of COVID-19, but they aver that both staff and prisoners do not follow these protocols. (*Id.* at PageID.400–413.) For instance, one JCF inmate in the same unit as Harp (B Unit) asserts that in July 2020, 47 out

4

of the 72 prisoners in that unit contracted COIVD-19. (ECF No. 18, PageID.405.) This prisoner also states that when he goes to chow hall, he sees MDOC staff and other prisoners not wearing their masks. (ECF No. 18, PageID.406.) Further, this prisoner explains that except for 48 of 1,700 prisoners at JCF, all prisoners are either housed in an eight-person cubicle or a two-person room—neither of which permits social distancing. (ECF No. 18, PageID.409.) Another prisoner explains that he was "religious" about mask wearing and using bleach to disinfect surfaces and that he was in a single-person cell—even so he contracted COVID-19. (ECF No. 18, PageID.403.) A third prisoner states that during the pandemic, prisoners have been treated the same as before the pandemic. (ECF No. 18, PageID.401.)

Harp has also filed a second reply to the Warden's response. There, Harp asserts that there are no conditions in prison adequate to minimize the spread of COVID-19 and further alleges that he exhausted his administrative remedies by pursuing a prison grievance. (ECF No. 19, PageID.418–419.) Additionally, Harp asks for camera footage from JCF; he believes that this footage will show that inmates are not practicing social distancing or wearing masks and that the staff at JCF has protested because reasonable measures are not being taken to protect them from COVID-19. (*Id*. at PageID.419–420.) Harp contends that, since the start of the pandemic, there have been several significant outbreaks of COVID-19 at JCF and that officials do not report most of the positive cases. (*Id*. at PageID.420.) He adds that health care has been nonexistent recently even though his chronic conditions require him to be seen monthly. (*Id*. at PageID.422.) Harp reiterates his

request for release on a tether or GPS during the coronavirus pandemic. (*Id*. at PageID.423.)

II.

As a threshold issue, it helps to properly characterize Harp's case-initiating document.

When a prisoner claims that his conditions of confinement violate the Eighth Amendment, the prisoner typically files a civil lawsuit pursuant to 42 U.S.C. § 1983. Indeed, the undersigned has another case pending before it where another prisoner at JCF asserts that officials have not adequately protected him from COVID-19; that case was filed as a civil lawsuit pursuant to 42 U.S.C. § 1983. *See Ryan v. Nagy*, No. 20-cv-11528 (E.D. Mich. filed June 2, 2020).

Here, though, Harp seeks release from prison. (ECF No. 1, PageID.8.) In other words, he does not merely want the Court to enjoin prison officials from acting with deliberate indifference to a serious risk of harm, he believes that the only remedy for the dangerous conditions at JCF is temporary release on a GPS tether. (*See* ECF No. 18, PageID.398; ECF No. 19, PageID.418, 422.) Because Harp believes that there is no change in the conditions at JCF that could eliminate the risk of harm presented by COIVD-19, and because he seeks release from prison, a petition for habeas corpus rather than a civil suit is the proper vehicle for Harp's claims. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of

habeas corpus."); *Wilson v. Williams*, 961 F.3d 829, 838 (6th Cir. 2020) (finding that federal prisoner's suit regarding COVID-19 was properly brought as a petition for habeas corpus and explaining "where a petitioner claims that no set of conditions would be constitutionally sufficient the claim should be construed as challenging the fact or extent, rather than the conditions, of the confinement").

But casting Harp's case-initiating document as a habeas corpus petition does not fully characterize the document. Instead it raises this question: is 28 U.S.C. § 2254 or § 2241 the proper statutory provision to pursue this type of petition for habeas corpus? The question arises because, unlike most § 2254 petitions, Harp does not claim that his conviction or his prison term is unconstitutional; he instead claims that the manner in which his prison term is being carried out is unconstitutional. *Cf. United States v. Jalili*, 925 F.2d 889, 893 (6th Cir. 1991) ("Because defendant Jalili is challenging the manner in which the sentence was being executed, rather than the validity of the sentence itself, Section 2255 does not apply. . . . [A]n attack upon the execution of a sentence is properly cognizable in a 28 U.S.C. § 2241(a) habeas petition."). In yet another case brought by a JCF prisoner seeking release due to COVID-19, another court in this District indicated that the petition might be proper under 28 U.S.C. § 2241. *Van Diver v. Nagy*, No. 20-11340, 2020 WL 4696598, at *2 (E.D. Mich. Aug. 13, 2020) ("Van Diver is in custody under a state-court judgment, but he is not targeting that judgment or seeking to be released permanently from 'custody pursuant to the judgment of a State court.' 28 U.S.C. § 2254(b)(1). Van Diver, therefore, may proceed under section 2241."). On the other hand, both Harp and Nagy argue that § 2254 is the proper vehicle for Harp's claim and the relief he seeks. (ECF No.

7

10-3, PageID.77 (Harp); ECF No. 15, PageID.150 (Nagy).) And the Sixth Circuit has stated, "[t]he reality is that § 2254 is the 'exclusive vehicle' of habeas relief for prisoners in custody under a state judgment." *Saulsberry v. Lee*, 937 F.3d 644, 647 (6th Cir. 2019). Given the parties' agreement and given *Saulsberry*, if the Court were required to resolve the issue, it would likely find that Harp's case-initiating document is a petition for habeas corpus under 28 U.S.C. § 2254.

But the Court is not required to resolve this issue. Whether via § 2254 or § 2241, to obtain release from prison, Harp must show that his continued detention violates the Constitution (specifically, the Eighth Amendment). *See* 28 U.S.C. § 2241(c)(3), § 2254(a). Because the Court finds that Harp has not established an Eighth Amendment violation, Harp's petition—whether via § 2254 or § 2241—will be dismissed.

### III.

#### A.

Before turning to the merits of Harps' Eighth Amendment claim, the Court notes that Harp probably did not exhaust it, and if so, there may not be grounds for overlooking Harp's failure to exhaust. *See* 28 U.S.C. § 2254(b)(1)(A) (requiring exhaustion); *Braden v. 30th Jud. Cir. Ct. of Kentucky*, 410 U.S. 484, 490 (1973) (pre-AEDPA decision applying judge-created exhaustion doctrine to a petition by state prisoner under § 2241(a)); *Gates-Bey v. U.S. Parole Comm'n*, 9 F. App'x 308, 310 (6th Cir. 2001) (noting judge-created exhaustion requirements for claims under § 2241(a)).

At least for petitions filed under § 2254, exhaustion of a claim requires a Michigan prisoner to present the claim to the state trial court, the Michigan Court of Appeals, and the

Michigan Supreme Court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009). Other judges in the Eastern District of Michigan and the Western District of Michigan have dismissed petitions seeking release due to COVID-19 where the state prisoner has not presented his claims to all three state courts. *See Sosby v. Brown*, No. 2:21-CV-54, 2021 WL 1152893, at *5 (W.D. Mich. Mar. 26, 2021) ("Petitioner does not explain why this Court can act on his urgent claim but the state court cannot. Indeed, the state, as the sovereign holding Petitioner in custody, is best suited to make the initial determination of whether that custody is constitutional."); *Calhoun v. Steward*, No. 1:21-CV-35, 2021 WL 800564, at *5 (W.D. Mich. Mar. 1, 2021) ("This Court identified three possible means of exhausting state remedies when it dismissed Petitioner's initial COVID-related habeas petition: a motion for relief from judgment under Mich. Comp. Laws § 6.500 et seq., a habeas corpus petition, or a civil action."); *Crowley v. Miniard*, No. 2:21-CV-10183, 2021 WL 1085154, at *2 (E.D. Mich. Feb. 10, 2021) ("Although the COVID-19 pandemic has had an undeniable impact on all aspects of society, including delaying court proceedings, there is no indication that Petitioner cannot obtain relief in the state courts.").

True, "the exhaustion doctrine would not bar [this Court's] review of [Harp's] claim if there were an absence of available State corrective process or if circumstances exist[ed] that render[ed] such process ineffective to protect the rights of the applicant." *Robinson v. Horton*, 950 F.3d 337, 346 (6th Cir. 2020); 28 U.S.C. § 2254(b)(1)(B). And here, Harp suggests that he has already filed one state court motion for relief from judgment, and thus is subject to Michigan's restrictions on a second motion for relief from judgment. (ECF

No. 10-3, PageID.83.) But "[a] defendant may file a second or subsequent motion based on a retroactive change in law that occurred after the first motion for relief from judgment *or a claim of new evidence that was not discovered before the first such motion.*" Mich. Ct. R. 6.502(G). Arguably, the pandemic and the associated situation at JCF is "new evidence." Further, as other courts have noted, there may be state court options other than a motion for relief form judgment. *See e.g.*, *Crowley*, 2021 WL 1085154, at *2 ("Petitioner may be able to file a state habeas petition challenging the legality of his continued confinement in light of prison conditions. . . . He may also be able to seek relief by filing a civil action in state court for unconstitutional conditions of confinement."); *see also Miller v. Cheeks*, No. 21-CV-10681, 2021 U.S. Dist. LEXIS 74259, at *4 (E.D. Mich. Apr. 19, 2021) (identifying the same options and finding that the habeas petition had to be dismissed for failure to satisfy the exhaustion requirement because petitioner "has not shown that relief for his claims is unavailable in the Michigan courts."). So, arguably, Harp has not exhausted his habeas corpus petition and should first seek the very relief he seeks from this federal court from the state trial court.

In addition to asserting that he has already filed one motion for relief from judgment, Harp also argues that he has exhausted his claim by using the administrative process provided by the MDOC. (ECF No. 19, PageID.419.) But presenting a claim to MDOC officials is not the same as presenting a claim to the state courts. Recall, Harp has not brought a civil suit under § 1983; that would have subjected this action to the Prison Litigation Reform Act and the Act's exhaustion requirements. Instead, Harp has filed a petition for habeas corpus under § 2254 (or, possibly, § 2241). Harp has not cited any

10

authority finding that a habeas corpus petition can be exhausted by following a prison system's exhaustion procedures as opposed to the state court procedure.

That said, the Court recognizes that Harp's petition is untraditional. As stated, he does not challenge his conviction or his sentence. He only challenges how he must serve his sentence (in prison or on home confinement). And even then, his challenge is only temporary, through the end of the pandemic. As such, maybe Harp can exhaust by filing his claim with the Michigan Department of Corrections.

And if that is the case, the Court cannot say on the record before it that his Eighth Amendment claim should be dismissed for failure to exhaust. Harp apparently filed a grievance and was told to bring his concerns about how JCF was handling the pandemic to the Warden's Forum. (ECF No. 18, PageID.416.) But, apparently, there have not been any such forums due to the pandemic. (*See id.*) As such, if Harp can exhaust a habeas corpus petition through the prison system rather than the state courts, it may be the case that Harp has no means to exhaust through the prison system. *See Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015) ("A prisoner's lack of compliance may be excused if the administrative remedies are not available, but this court has required a prisoner to make affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable." (internal quotation marks omitted)).

Accordingly, given the unusual nature of Harp's claim and the uncertainty of whether there is a viable state remedy, the Court will address Harp's Eighth Amendment claim on the merits.

**B.**

As a threshold matter, releasing Harp from prison does not appear to be an appropriate remedy under the Eighth Amendment. *See Glaus v. Anderson*, 408 F.3d 382, 387 (7th Cir. 2005) (noting release is not among the proper remedies for Eighth Amendment deliberate indifference claims, which are limited to injunctive relief for proper treatment and damages); *Van Diver*, 2020 U.S. Dist. LEXIS 145839 at *7 (petitioner seeking temporary release from custody until the COVID-19 pandemic was resolved recognized that he was "not entitled to release under the Eighth Amendment to the United States Constitution"); *Heximer v. Woods*, No. 08-14170, 2018 U.S. Dist. LEXIS 37732, 2018 WL 1193368, at *2 (E.D. Mich. Mar. 8, 2018) (noting that "release from custody is not an available remedy for a deliberate indifference claim").

Nor can Harp show that JCF's response to the COVID-19 pandemic constitutes an Eighth Amendment violation. The Eighth Amendment "protects all people from 'cruel and unusual punishments.'" *Wilson v. Williams*, 961 F.3d 829, 839 (6th Cir. 2020). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). The Eighth Amendment's deliberate indifference framework includes both an objective and subjective prong.

First, the prisoner must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Id*. at 834. It appears that Harp has only been diagnosed with one condition (hypertension) that the Centers for Disease Control and Prevention identifies as putting him at risk for severe illness from COVID-19. But given Harp's age

and the combination of his other potentially serious underlying medical conditions, being incarcerated in confined and crowded spaces where hundreds of inmates have tested positive for COVID-19 satisfies this requirement. *See Wilson*, 961 F.3d at 840; *Vandiver*, 2020 U.S. Dist. LEXIS 145839, at *10.

Next, the prisoner must show that a prison official is aware of the "excessive" risk to his health or safety and "disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. An official may not be held liable if he responded reasonably to a known risk, even if the harm ultimately was not averted. *Id*. at 826.

The Sixth Circuit set a high bar for establishing this claim in another case challenging COVID-19 precautions at a federal prison in Ohio. *Wilson*, 961 F.3d at 841. In *Wilson*, The Bureau of Prisons provided evidence that FCI Elkton had adopted procedures to screen inmates, isolate and quarantine inmates who might have contracted the virus, limit movement within the prison and limit group gatherings, test in accordance with CDC guidance, limit staff and visitors, subject staff and visitors to enhanced screening, clean common areas, provide cleaning agents for inmates to clean their cells, provide "continuous" access to sinks, water, and soap, educate staff and inmates about virus prevention, and provide masks and other personal protective equipment. *Wilson*, 961 F.3d at 841. From this evidence, the Sixth Circuit concluded that "the BOP responded reasonably to the known, serious risks posed by COVID-19 to petitioners at Elkton," even though "the harm imposed by COVID-19 on inmates at Elkton 'ultimately [is] not averted.'" *Id*. As a result, the court found that the *Wilson* plaintiffs were unlikely to succeed

13

on the merits of their Eighth Amendment claim, and the Sixth Circuit reversed the district court's grant of a preliminary injunction. *Wilson*, 961 F.3d at 840–41.

The Sixth Circuit reached a similar decision in an unpublished opinion shortly afterwards. In *Cameron v. Bouchard*, prisoners at the Oakland County jail filed a combined § 1983 class action and § 2241 habeas petition against the county and the county sheriff, alleging that their deliberate indifference to substantial risk of harm posed by COVID-19 at jail violated their rights under the Eighth and Fourteenth Amendments. *See* 815 F. App'x 978 (6th Cir. 2020). The Sixth Circuit ruled that they had failed to show a likelihood of success on the merits for a preliminary injunction because the prison took reasonable steps to limit the spread of the virus, including instructing staff on enhanced cleaning procedures, stopping visitation, adopting quarantine procedures, screening prisoners entering the facility, and conducting a prison release program. *Id*. at 984. The Sixth Circuit found no deliberate indifference on that record even where the plaintiffs presented evidence that the prison was housing prisoners in group cells despite availability of many empty prison cells. *Id*. at 986.

Through his own accounts and sworn affidavits by other inmates, Harp raises concerns about COVID-19 management at JCF. But he does not explain how his situation is meaningfully different from FCI Elkton in *Wilson*. The warden's response brief here details the efforts taken by MDOC for the management of COVID-19 in its facilities, including JCF. (ECF No. 15.) In the early months of the pandemic, this included enhanced screening measures and restrictions on visitation. Advisories were issued covering numerous topics. (*Id*. at PageID.288–294.) Updated protocols and procedures covered

14

topics such as the creation of special housing units, the revision of parole or discharge criteria, screening for intakes and transfers, social distancing, and cleaning requirements. (*Id*. at PageID.294–295.) The MDOC also provided prisoners and staff with masks; used non-traditional areas to cohort certain prisoners; reduced the number of prisoners in communal living arrangements; purchased portable showers to minimize movement; established positive response units; and tested prisoners for COVID-19. (*Id*. at PageID.295–298.) The MDOC also tried to safely reduce its prison population. (*Id*. at PageID.301–302.)

In his December 4, 2020 affidavit, warden Nagy stated that he is involved daily in the implementation of the MDOC's policies and directives for preventing the spread of COVID-19 at JCF and that JCF is exceeding the CDC's guidelines. (*See* ECF No. 15-2, PageID.174, 186.) At the time of his affidavit, less than twenty prisoners on the side of the JCF where Harp is housed had tested positive, there had been no COVID-19 deaths in the units where Harp has been housed since the onset of the pandemic, and Harp had been tested over 10 times with all negative results. (*Id*. at PageID.173–174, 180.) Nagy further advised that Harp's housing units were quarantined as a precautionary measure after a few prisoners in the units tested positive. (*Id*. at PageID.175.) Nagy acknowledged that Harp was sharing certain facilities but explained the cleaning protocols in place. (*Id*. at PageID.181.)

Harp and the other inmates who provided supporting affidavits seem to acknowledge the existence of COVID-19 procedures and protocols at JCF. The essence of their allegations is that inmates and staff are not following them. The warden addresses

15

these allegations as well. His affidavit explains his efforts to secure compliance with MDOC's COVID-19 protocols. These efforts include (1) near daily meetings with his staff to receive updates on all COVID-19 measures and any issues that arise regarding the implementation and enforcement of these measures; (2) daily messaging to prisoners of COVID-19 risk reduction protocols; (3) making daily rounds throughout the facility; (4) receiving near daily updates from staff about prisoner mask-wearing and social distancing; and (5) making clear to staff that failure to respond to prisoner concerns over hand soap, cleansing materials, or PPE, and failing to enforce the protocols could result in corrective action. (*Id*. at PageID.184–188.)

The JCF inmate affidavits make clear that these efforts have not secured perfect compliance. But similar to *Wilson*, even if the response at JCF has not been wholly adequate, Harp has not persuaded the Court that warden Nagy and JCF staff have "disregarded a known risk or failed to take any steps to address the risk." *Wilson*, 961 F.3d at 843. There is no basis to find that his efforts to implement and enforce MDOC's COVID-19 protocols at JCF are so deficient as to violate the Eighth Amendment.

Before ending, the Court notes that the record has not been supplemented for many months. Yet the dynamics of the coronavirus pandemic are constantly changing. Thus, the Court feels compelled to reference MDOC's public website that is devoted to COVID-19 information. *Coronavirus Information*, MDOC, https://perma.cc/RCX5-Y5HL (last visited May 12, 2021). It details MDOC's continuing COVID-19 measures with respect to personal protective equipment, cleaning, and mitigation measures, visits and transfers, quarantine and care of sick prisoners, staff measures, and operational changes. (*Id*.) The

website further advises that JCF is presently reporting only four active prisoner cases of COVID-19. (*Id*.) But the most significant change since the start of this litigation has been the development of the COVID-19 vaccines. As it pertains to Harp, MDOC reports that on March 8, 2021, its facilities began offering the vaccine to prisoners who are aged 50 and older with an underlying health condition. (*Id*.) Thus, the Court expects JCF to have offered the vaccine to Harp, which would further support that MDOC officials and Nagy have not disregarded the grave risk to Harp's health or safety posed by the coronavirus. If, however, the vaccine has not been offered to Harp, Harp may seek reconsideration of this order.

## IV.

For the reasons given, Harp's Eighth Amendment claim fails. Accordingly, Harp has not shown that he is being incarcerated in violation of his rights under the Constitution, and his petition for habeas corpus is DISMISSED.

A certificate of appealability is DENIED because reasonable jurists could not disagree with the Court's resolution of Harp's claims, nor conclude that the constitutional issue deserves encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Should Harp nonetheless chooses to appeal, he may do so without prepaying the appellate filing fee.

SO ORDERED.

Dated: May 18, 2021

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE